METROPOLITAN LIFE INSURANCE COMPANY *et al. v.* HALL, administrator, *et al.*

No. 13354. December 3, 1940.

*J. Eugene Cook, Jay & Garden,* and *Evins, Quillian & Evins,* for plaintiffs in error.

*Paul T. Chance, E. L. Rowland,* and *W. K. Miller,* contra.

BELL, Justice. This suit began as a petition in equity. The plaintiff offered an amendment for the purpose of converting it into a complaint for land, damages, and mesne profits. The amendment was allowed over objection, and this ruling among others is assigned as error. The other assignments of error complain of orders overruling general and special demurrers to the petition and to the petition as amended. The suit was brought by Dewey F. Hall in his representative capacity as administrator of the estate of William B. Hall. The defendants were Metropolitan Life Insurance Company, Atlanta Trust Company, Roland R. Doke, and J. H. Rowland. The following is deemed a sufficient statement, based on the allegations of the petition and the attached exhibits: "William B. Hall, prior to his death, was the owner of a large body of improved farm lands in said Johnson County, and in the 56 and 1201 districts thereof, the same consisting of some ten or twelve adjoining tracts." On July 25, 1883, William B. Hall executed an instrument purporting to be his last will and testament. By Item 2 he bequeathed to his wife all of his property for life, with remainder estates to named children and grandchildren, "the testator giving to each of said children and grandchildren a described tract of land, in remainder, by the several items of his will." It appears from Item 3 of the will that a part of the land so owned by the testator included a tract known as the

"Connor Place." Item 13 was as follows: "I give and bequeath to my daughter, Lenora Christian Hall, the following property, to wit: three hundred and fifty acres of land, more or less, in said county, lying upon the waters of Hutchins and Flat Rock adjoining the Connor place." Among those to whom he devised a remainder estate in land was a daughter named Julia, to whom he devised in remainder 400 acres, more or less. To another daughter, Exey, he bequeathed no interest whatever in land, and no property of any kind except $25 in money. Item 15: "I further desire that all property both real and personal that I have not given and bequeathed in this will at my death be sold and equally divided between my children and grandchildren except Thomas Carter's, he having received his equal share and also I except my daughter Exey Hall."

Afterwards, on August 4, 1885, William B. Hall executed a "trust deed" naming as trustees his wife and another person. This deed (recorded in the proper county in 1901), after stating the date and designating parties, recited as a kind of preamble that the grantor was desirous of making provision for seven named daughters, including Exey but omitting Julia, "against future contingencies and for their support and maintenance," and that he desired "that his said daughters above named should enjoy the proceeds, rents, issues, and income of the real estate named and described in his will during the term of their natural lives." The preamble also referred to the children of a named deceased daughter. It was next recited that in consideration of the premises and the sum of $5 said Hall as party of the first part "doth convey and confirm unto the said parties of the second part [the trustees previously named] all of the property set forth in said will to his said daughters and his grandchildren of his deceased daughter above named." The trustees were directed to pay the "net rents and income to the parties to which they are due according to said will . . during the term of their natural lives." Other provisions of the trust deed were as follows: (a) The trustees shall "convey the said land and property to such person or persons as they [the beneficiaries] severally may direct by their last will and testament, or by an instrument subscribed by either of them, as to each of their parts, in the nature of the last will and testament, subscribed by her in the presence of two creditable wit-

nesses;" (b) "that upon the decease of his said daughters, the rust shall cease and determine, and the land and premises described to each shall belong in fee simple to their children;" (c) "in case either of them [the daughters] die without children, the property shall revert back to the said William B. Hall's estate, the grantor herein named, and to his heirs and their sole use and benefit and behoof forever." There was no description of property more definite or specific than as above indicated, and no more definite reference to a "will."

William B. Hall died on August 8, 1885. John Hall, the executor named in the instrument of July 25, 1883, caused it to be probated as the last will and testament of William B. Hall, but he never took possession or control of any of the property of the estate. The trustees named in the trust deed "went into possession and control of said farm lands," and performed the duties and obligations imposed by said instrument during their respective lives, one of them having died in 1900, and the other in 1922. The daughter named in item 13 of the will afterwards became by marriage Lenora Christian Hall Chivers. She died on February 27, 1939, without issue. "Said Lenora was the last surviving child of the testator, William B. Hall, and upon her death the said tract of land and the title thereto reverted back to the estate of William B. Hall." The petition further alleged that his daughter had only a life interest in the rents, issues, and profits of the land referred to "in said deed and will, said tract being that involved in this action and described as follows: All that tract or parcel of land situate, lying, and being in the 56th and 1201st G. M., Johnson County, State of Georgia, containing three hundred fifty six and one fourth (356¼) acres, more or less, and being more fully described as follows: Beginning at a gum where Cypress Creek enters Flat Rock Creek, thence running in a northerly and northwesterly direction along Flat Rock Creek to a point at the intersection of the line of lands belonging to Mrs. Isabelle Carter; then running south 36¼ degrees east 34.50 chains; thence running south 70 degrees east 2.76 chains; thence running south 81 degrees east 54 chains to Hutchens Branch; thence running in a southerly direction along Hutchens Branch to a gum at line of lands of W. D. Rowland (formerly belonging to Mrs. Martha Hall) ; thence running north 55½ degrees west 60 chains to a stake; thence running south

34 degrees west 25 chains to a stake; thence north 65 degrees west 7.70 chains to a point in Cypress Creek, thence along Cypress Creek to gum at place of beginning."

After the death of the trustees named in the trust deed no successor trustee was appointed, but the beneficiaries under that deed, including Mrs. Lenora Christian Hall Chivers, "thereafter took possession and received the rents, issues, and profits from their respective tracts of land, pursuant to the terms and provisions of said trust deed." In October, 1919, this daughter was induced by her husband and his son-in-law, Roland R. Doke, to execute to the latter two deeds, one purporting to convey to him 175 acres of said tract of land in fee simple; and the other purporting to convey the remaining 181 acres "of said tract, subject to a life-estate in the said Lenora Christian Hall Chivers." On October 16, 1920, the defendant Roland R. Doke procured Mrs. Chivers to execute another instrument purporting to be a quitclaim deed conveying to him the same 181 acres, without such reservation. On October 1, 1920, Doke executed a security deed "purporting to convey the title to all of said land to the defendant Atlanta Trust Company." This company later transferred or conveyed its interest to the Metropolitan Life Insurance Company, which, on December 1, 1927, executed to itself a deed to the property in pursuance of a power of sale contained in such security deed. The insurance company afterwards dispossessed Mrs. Chivers, and since about January 1, 1928, it has, together with its agent J. H. Rowland, been in possession of this land.

Paragraph 24 of the petition was as follows: "Plaintiff alleges, that the said deeds passing to and from defendants were without consideration; that the defendants, and each of them, received and/or executed each of said instruments with actual and constructive notice at the time, of the existence of said trust deed, and with actual and constructive notice of the fact that Lenora Christian Hall Chivers never had any title to the said land and premises; that the defendants' acts and conduct aforesaid was part of a joint scheme and enterprise, the object of which was to avoid the express wishes and purposes of the testator, becloud and damage the title to said property, and thus obtain possession thereof." In the original petition the plaintiff prayed: (a) For cancellation of deeds; (b) "that the fee-simple title to said described tract of

land and premises be decreed by the court to be and rest in the estate of plaintiff's testator, free of any right, claim, demand, or lien which the defendants or either of them may have or assert, and that plaintiff be put in possession of said property;" (c) for mesne profits; (d) for a stated sum as "damages for trespass and damage to said property and the title;" (e) for receiver; (f) for rule nisi; (g) for process and service; (h) for general relief. In his amendment the plaintiff alleged that he "was appointed and qualified as administrator de bonis non cum testamento annexo of said estate on the first Monday in May 1939." In lieu of one paragraph of the petition which has not been stated above, the amendment substituted the following: "That the testator having executed said will prior to the execution of said trust deed, the latter superseded the former as to said realty, and thus no assent as to such legacy on the part of the executor was ever had; that in and by the residuary clause contained in the 15th item of said will the testator makes provision for the sale and distribution of any property not bequeathed therein, and the title to the property involved herein being now in the estate of the testator, said property passed under the residuary clause of said will, and plaintiff is entitled to recover said property for the purpose of sale and distribution to the heirs; that said property is incapable of division in kind among the heirs, and it is necessary to make a sale thereof in order to effect a proper distribution." The amendment also struck "from said petition and the prayers thereof all claims to injunction, receiver, and equitable relief."

The original and renewed demurrers, general and special, filed by the Metropolitan Life Insurance Company and the Atlanta Trust Company were overruled, and they excepted. As indicated above, they assigned error also upon the allowance of the plaintiff's amendment. The questions raised by the various exceptions will be stated in the opinion, so far as a decision thereof is proper or necessary.

■ In the original petition Dewey F. Hall sued "in his representative capacity as administrator of the estate of William B. Hall," but in an amendment he alleged that he "was appointed and qualified as administrator de bonis non cum testamento annexo of said estate," before the suit was filed. The amendment did not specifically allege that he was intending to proceed in the latter

capacity, nor was the petition expressly so amended as to change the original designation of the party plaintiff. The plaintiffs in error, however, who were defendants in the court below, having treated the case as if the petition as amended amounted to a suit by the plaintiff as administrator de bonis non with the will annexed, we may deal with it accordingly. *Peavy* v. *Sangster,* 13 *Ga. App.* 418 (2) (79 S. E. 215). The plaintiffs in error do contend that the amendment added a new and distinct party plaintiff, and they objected to the amendment on that ground; but this question will be dealt with in a later division of this opinion, in considering the exceptions to the allowance of the amendment. In logical order, the first question for determination is whether the plaintiff, as administrator de bonis non with the will annexed, is entitled to maintain this action, or whether *instead* the suit should have been instituted by the heirs at law of William B. Hall, deceased, assuming that the petition was not otherwise defective or subject to demurrer. In discussing this particular question, and some others raised, we may for convenience refer to the property as a definite and specific tract, although the sufficiency of the description is itself a matter for determination under the record, being, however, a separate and distinct question.

Could the suit as amended proceed in the name of such administrator as the party plaintiff? According to the allegations, William B. Hall executed a will in 1883. By that instrument he devised to his wife his entire estate for and during her natural life, with remainder estates in separate tracts to named children and grandchildren. In item 13 he devised in remainder to his daughter, Lenora Christian Hall, a tract of 350 acres more or less, which is now the property in controversy. Later, in 1885, he executed a trust deed, in which among other things he undertook to convey this tract to trustees for the use and benefit of his daughter Lenora during her life, with remainder in fee simple to her children, but in case of her death without children, "the property shall revert back to the said William B. Hall's estate, the grantor herein named, and to his heirs and their sole use and benefit and behoof forever." A few days after the execution of this deed William B. Hall died. His will was duly probated, but his executor did not take control or possession of any of the property. On the contrary, the trustees took possession under the trust deed. One of the trustees died in

1900, and the other in 1922. Lenora Christian, who afterwards became Mrs. Chivers, died in February, 1939, without children. It appears from the petition that whatever claim the defendants have is based upon deeds executed by Mrs. Chivers in her lifetime, in which she purported to convey the title in fee simple. Although there is a further question as to the nature of the action, we may at this point treat the case as an action for land. The plaintiff, as administrator of the estate of William B. Hall, is seeking a recovery in view of the foregoing condition as to reverter. He also refers in his petition to item 15 of the will, in which the testator directed that all of his property "not given and bequeathed in this will . . · be sold and equally divided" between his children and grand-children, with stated exceptions.

The question as to the right of the administrator to sue may be cleared up to some extent by considering the nature of the estate which he claims for the "heirs at law" under the reverter clause of the trust deed,—whether it is an estate of purchase or one of inheritance. If the heirs at law took as purchasers under this clause, the title passed absolutely to them on the death of Mrs. Chivers without children, and the administrator would have no right to sue. We think, however, that a proper construction of this clause is that the property would revert to the *estate of the grantor* on the death of his daughter without children, and that his heirs at law would take by inheritance and not by purchase. The effect is substantially the same as if the deed had provided for reversion to the grantor himself, as in *Atlantic Coast Line Railroad Co.* v. *Sweat,* 177 *Ga.* 698 (171 S. E. 123), where an administrator's suit was sustained, or to "the grantor herein, his heirs, executors, and administrators," as shown by the record in *Cooper* v. *Davis,* 174 *Ga.* 670 (163 S. E. 736), where it was held that the grantor retained an assignable interest under such reverter clause. See also, in this connection, Code, §§ 113-901, 113-907; *Nussbaum* v. *Evans,* 71 *Ga.* 753; *Wilder* v. *Holland,* 102 *Ga.* 44 (29 S. E. 134); *Oliver* v. *Powell,* 114 *Ga.* 592 (4) (40 S. E. 826); *Bowen* v. *Driggers,* 138 *Ga.* 398 (75 S. E. 318); *Edwards* v. *Edwards,* 147 *Ga.* 12 (3) (92 S. E. 540); 18 C. J. 310, § 292. The estate being one of inheritance, and the petition as amended having alleged that it was necessary to recover the property for the purpose of sale or distribution, the suit was properly brought in the name of the administrator, so far as it is

based on the reverter clause in the trust deed. These latter allegations having been actually made, whether they were necessary need not be decided. *Green* v. *Grant*, 108 *Ga.* 751 (2) (32 S. E. 846); *Mayor &c. of Chauncey* v. *Brown*, 99 *Ga.* 766 (2) (26 S. E. 763); *Morris* v. *Mobley*, 171 *Ga.* 224 (4) (155 S. E. 8); *Caraker* v. *Brown*, 152 *Ga.* 677 (111 S. E. 51). For the most part, the decisions relied on by counsel for the plaintiffs in error relate to remainders or other estates provided in wills and assented to by the executors. In each of such cases the property passed from the estate of the testator, and could not be recovered by the legal representative. None of the authorities cited for the plaintiffs in error support the contention that the "heirs at law" referred to in this trust deed took as purchasers and not by inheritance.

We consider next the residuary clause contained in item 15 of the will. It is insisted by counsel for the plaintiffs in error that this clause has no relevancy whatever in the present case. Even if that be true, the administrator was still a proper party to sue, under the ruling just made. It may be noticed in this connection that in this item of the will the testator did not provide for sale and distribution of the residuum to his heirs at law, but directed that it be sold and divided among named children, to the exclusion of others. Whether this property, if recovered, should be administered under the laws of inheritance, or according to the will, and if so what item, would depend upon numerous questions relating to ademption of legacies and devolution of property after failure of a legacy or devise, upon none of which is any decision or ruling necessary in the present case; for in any view of these questions the administrator was a proper party to sue, according to the facts alleged. "In every case, the executor or administrator with the will annexed shall be entitled to possess and administer the entire estate, although any part thereof is undevised, holding the residuum, after payment of debts and legacies, for distribution according to the laws of this State." Code, § 113-1503. Even if it should be said that the petition indicates an erroneous idea on the part of the administrator as to the proper disposition to be made of the recovery, if any, this alone would not defeat his right to sue in view of the other allegations showing that an administration is proper. See *Norcross Butter & Cheese Co.* v. *Summerour*, 114 *Ga.* 156 (39 S. E. 870).

■ The plaintiffs in error objected to the allowance of the plaintiff's amendment, upon the grounds: (a) there was nothing to amend by; (b) the amendment would substitute a new and distinct cause of action; (c) it further sought to substitute a new and distinct party plaintiff; (d) the amendment and the petition as amended were multifarious and contained a misjoinder of parties defendant. We consider these questions next, for the special reason that a question of jurisdiction is urged in this connection. As to that question, it should be stated first that these plaintiffs in error did not reside in the county in which the suit was filed; and it was contended that the court did not have jurisdiction, for the reason that no equitable relief was prayed against a resident defendant. It is insisted that in these circumstances the petition could not be converted into an action for land so as to give the court jurisdiction of them, when it did not have such jurisdiction under the equitable petition. Despite some further contention that the petition as amended could not be construed as an action for land, we are of the opinion that it may and should be so construed. It contained prayers that "the plaintiff be put in possession of said land," and for mesne profits, and was thus different from the petition in *Southern Title Guarantee Co.* v. *Lawshe,* 137 *Ga.* 478 (2) (73 S. E. 661). Compare *Jones* v. *Gilpin,* 127 *Ga.* 379 (56 S. E. 426). Cases respecting title to land shall be tried in the county where the land lies. Code, § 2-4302. A petition in equity may be changed by amendment into an action at law, where the amendment is not otherwise objectionable (*Harrell* v. *Parker,* 186 *Ga.* 760 (3), 198 S. E. 776) ; and where, as in this case, the original petition sought both to recover land and to cancel deeds relating thereto, it was not a good ground of objection to an amendment converting the action into a suit at law for recovery of the land that the court did not have jurisdiction of the defendants before the amendment. *Sirmans* v. *Powell,* 184 *Ga.* 693 (192 S. E. 823).

There is no merit in the contention that the amendment sought to substitute a new and distinct party plaintiff. "In an action by or against an individual, the pleadings may be amended by inserting his representative character." Code, § 81-1308. Under this principle, a suit by an administrator may be amended by inserting additional words to describe his representative character,

such as that he is an administrator de bonis non with a will annexed. *Hines* v. *Rutherford,* 67 *Ga.* 606. There was no merit in the contention that the original petition did not contain enough to amend by. *Harrell* v. *Parker,* supra. So long as the petition remained a suit in equity, there was no misjoinder of parties defendant, but in the suit as amended no relief was prayed against the Atlanta Trust Company or Roland R. Doke, and no reason appeared why either of these parties should remain in the case as a party defendant. The amendment was subject to objection on the ground that it would result in a misjoinder of parties, nothing being said therein as to striking these two defendants. For this reason the court erred in allowing the amendment. The amendment was not subject to other objection urged. The same question of misjoinder was presented by the renewed special demurrer of the Metropolitan Life Insurance Company, and this ground of the demurrer should have been sustained.

■ Another contention presented by the demurrers was that the trust deed on which the plaintiff relied was not recorded within the time required by law. The Code, § 108-114, declares, in part, that when a trust is created by deed, "the deed shall be recorded where the cestui que trust resides, within three months from its execution, and if not so recorded the same shall be null and void." It has been held that this provision does not apply to trust deeds for the benefit of minors. *Heatley* v. *Long,* 135 *Ga.* 153 (3) (68 S. E. 783). See *Leavitt* v. *Leavitt,* 149 *Ga.* 601 (101 S. E. 670). The correctness of these decisions is challenged by the plaintiffs in error, and we are requested to review and overrule them,—or to refuse to follow them, neither decision having been concurred in by all the Justices. We do not deem it necessary in this case to reconsider in any manner the rulings in these decisions, because, even if the foregoing provision as to record should be held applicable to a deed of trust for the benefit of minors, we think the phrase "null and void" should be construed to mean *voidable,* and that only such persons as may have been injured by a failure to record within the time prescribed should be heard to complain of such failure. The petition here shows upon its face that no such injury or prejudice was sustained by these defendants or either of them. See, in this connection, 65 C. J. 264, § 45. As instances of similar construction of other statutes, compare *Mashburn* v: *Dannenberg*

*Co.,* 117 *Ga.* 567, 588 (44 S. E. 97) ; *Hawes* v. *Glover,* 126 *Ga.* 305 (5) (55 S. E. 62) ; *Scaife* v. *Scaife,* 134 *Ga.* 1, 4 (67 S. E. 408) ; *Hood* v. *Duren,* 33 *Ga. App.* 203 (125 S. E. 787).

■ It is further contended that the deeds executed by Mrs. Chivers to Roland R. Doke, under whom the defendants claim, should be construed as an exercise of the power of appointment conferred upon her by the trust deed. We can not sustain this contention. A power of appointment can be exercised only in the manner specified by the donor. *Porter* v. *Thomas,* 23 *Ga.* 467 (3) ; *Wilder* v. *Holland,* 102 *Ga.* 44 (29 S. E. 134) ; *Newton* v. *Bullard,* 181 *Ga.* 448, 451 (182 S. E. 614). The deed of trust did not authorize Mrs. Chivers to dispose of this property directly either by will or by any "instrument in the nature of" a will,—whatever the latter phrase may mean. It merely provided that she could give direction to the trustees by either method; and that they should then convey the land as thus directed. Neither of these things was done.

■ It is insisted by the plaintiffs in error that the petition shows upon its face that title by prescription has ripened in their favor. Regardless of other questions argued in this connection, paragraph 24 of the petition, quoted in the foregoing statement, alleged in effect that the possession of the defendants originated in actual fraud (*Virgin* v. *Wingfield,* 54 *Ga.* 451 (2) ; *Salter* v. *Salter,* 80 *Ga.* 178 (8), 186, 4 S. E. 391, 12 Am. St. R. 249) ; and if such is the case, their possession could not be the foundation of prescription. Code, §§ 85-402, 85-407, 85-414. The Metropolitan Life Insurance Company demurred to paragraph 24 as an entirety, on the grounds: (a) it fails to show how the alleged *actual* notice was given; and (b) the allegation "that the defendants' acts and conduct aforesaid was part of a joint scheme and enterprise, the object of which was to avoid the express wishes and purposes of the testator and becloud and damage the title to said property and thus to obtain possession thereof," is a mere conclusion because it does not "set out any set of facts to show the existence of any scheme or enterprise." These grounds of demurrer were not well taken; and so it can not be held that the petition showed prescriptive title in any defendant. As to the demurrer, see *McDowell* v. *Donalson,* 149 *Ga.* 600 (101 S. E. 578) ; *Shirley* v. *Standard Oil Co.,* 172 *Ga.* 191 (157 S. E. 267) ; *Walker* v. *Grand International*

*Brotherhood,* 186 *Ga.* 811 (2) (199 S. E. 146) ; *Nelson* v. *Estill,* 190 *Ga.* 235 (3) (9 S. E. 2d, 73).

■ Another question raised by the general demurrers was whether the petition, considered with its exhibits, contained any sufficient description of the property. The petition itself contained a particular description, but it was further alleged that the land referred to "in said deed and will" is that "involved in this action," and therefore the sufficiency of the description will depend upon "said deed and will." The question for determination consists of two branches. The trust deed itself contained no description whatever, except that the grantor referred therein to "the real estate named and described in his will;" and the first matter for consideration is whether the deed of trust sufficiently identified any will as a writing to which reference might be made for a more specific description. The second branch of the question is whether item 13 of the will itself sufficiently described any tract of land. We will consider these two subquestions in the order stated.

It appears from the record that William B. Hall executed a will on July 25, 1883. After his death in August, 1885, this instrument was duly probated. In the meantime the testator executed the trust deed, referring therein to the real estate described "in his will." This deed was executed more than two years after the date of the will; and the question is, does it appear with sufficient certainty that the will referred to in the deed is the same will that was made by the grantor on July 25, 1883, and that was probated after his death? We do not think so. It is true that a deed may refer to another deed or to a map or other writing for a more particular description. It has been so held many times by this court, and the rule appears to be one of general acceptation. See *Crawford* v. *Verner,* 122 *Ga.* 814, 816 (50 S. E. 958); *Sizemore* v. *Willis,* 130 *Ga.* 666 (61 S. E. 536) ; *Whitfield* v. *Maddox,* 189 *Ga.* 870, 874 (8 S. E. 2d, 57). But the rule, of course, should not be pressed to unreasonableness. In every case the instrument of reference must itself be sufficiently identified. The deed here does not give the date of any will, nor does it contain other data by which any particular will might be identified. It does refer to a will in which the grantor bequeathed property in severalty to the daughters and children of a deceased daughter, but provisions to this effect could have been contained in any number of writings which had been

signed by the grantor as his last will and testament. The fact that the will dated July 25, 1883, was finally probated as the testator's last will and testament does not answer the question. The inquiry is not as to whether some particular instrument may have been adjudicated, after the testator's death, to be his true will, but is whether the paper or instrument dated July 25, 1883, is the "will" that he had in mind at the time of executing the trust deed. He might have executed another "will" or several others during the more than two years from July 25, 1883, to August 4, 1885; and if so, the last one executed would probably have been the one that he had in mind. Still, it could have happened that the instrument dated July 25, 1883, was the only document in the nature of a will which was discovered by any party at interest, or that for some other conceivable reason this instrument to the exclusion of others was finally adjudicated to be the last will and testament of William B. Hall.

While, if nothing else appeared, it might be presumed that the will of July 25, 1883, was not superseded or changed by any subsequent testamentary instrument and thus must have been the will referred to in the trust deed, yet such presumption as to continuance (*Coleman & Burden Co.* v. *Rice,* 105 *Ga.* 163, 164, 31 S. E. 424; *Anderson* v. *Blythe,* 54 *Ga.* 507), can not be given effect in this instance, for the reason that the deed refers to a will apparently different in some respects from that instrument. In the will of July 25, 1883, as shown in the record, the daughter Exey was entirely disinherited, except that she was to receive a small amount of money; whereas in the deed she is mentioned along with other daughters to whom land had been devised. Again, the daughter Julia was omitted entirely from the deed, although under the will she was to have in remainder a tract of land consisting of four hundred acres, more or less. The petition does not allege, either directly or by implication, that between the dates of the latter instrument and of the trust deed no other paper or instrument had been signed by William B. Hall as his last will and testament. Any allegation to that effect might be difficult of proof, and we do not say that even with it the petition would have shown a sufficient identification of the instrument of reference, but as the matter stands it could at most be only a matter of guess or conjecture as to what paper or instrument was in the mind of the grantor at the

time he executed the trust deed. After a will has been probated, it may be referred to for matter of description (*Yopp* v. *Atlantic Coast Line Railroad Co.*, 148 *Ga.* 539, 97 S. E. 534), and even an instrument that has not been probated. as a will might be so referred to if it is identified either in specific terms or by any key which could lead to its identification by the aid of parol evidence; but in this case the trust deed itself did not sufficiently identify any particular instrument as the "will" of the grantor, and neither does the petition allege or develop any fact which might be taken as a key. It follows that the trust deed did not contain sufficient reference to any instrument to which resort might be had for a description of the land.

But even assuming that the will itself was sufficiently identified, what do we find in it in the way of description? The pertinent provision is item 13. In this item is the following description: "three hundred and fifty acres, more or less, in said [Johnson] county, lying upon the waters of Hutchins and Flat Rock, adjoining the Connor place." According to the plaintiff's allegations, the testator owned "a large body" of land consisting of ten or twelve "adjoining tracts." Considering the petition and the will together, the necessary conclusion is that the property referred to in this item, including the Connor place, was a part of a larger single body of land owned by the testator. The reference to the Connor place would provide prima facie a sufficient key to a boundary on one side, but for aught that appears the testator may have had other lands, besides the Connor place, adjoining those referred to in this item; and if so, the qualifying words "more or less" would render the description too vague and indefinite. In such case, any key which might inhere in the quoted description, if these lands were separate and apart from other lands of the testator, fails completely as an aid to description. See *Farrar Lumber Co.* v. *Brindle*, 170 *Ga.* 37 (5) (151 S. E. 923); *King* v. *Sears*, 91 *Ga.* 577 (2) (18 S. E. 830); *Whitfield* v. *Maddox*, supra; *Huntress* v. *Portwood*, 116 *Ga.* 351 (3) (42 S. E. 513); *McClellan* v. *Lipsey*, 169 *Ga.* 184 (2) (150 S. E. 91); *Holloway* v. *Key*, 188 *Ga.* 423, 425 (4 S. E. 2d, 167); *Laurens County Board of Education* v. *Stanley*, 187 *Ga.* 389 (200 S. E. 294); *Tolbert* v. *Short*, 150 *Ga.* 413 (3) (104 S. E. 245).

It is true, as stated above, that the petition itself contained a

particular description of the land sued for, but there was no sufficient allegation tending to apply thereto any description or key which might have been expressed in the will; and consequently, it must be held that item 13 of the will is apparently void for the want of any valid description of land. *Lewis* v. *Trimble*, 151 *Ga.* 97 (4-*b*) (106 S. E. 101). Moreover, since the specific and affirmative allegations of the petition showed that the property referred to in item 13 was part of an entire body of land owned by the testator, and since the petition must be construed most strongly against the pleader, it must be taken, in the absence of allegation to the contrary, that the testator did own other lands, besides the Connor place, adjacent to those mentioned in this item. In the circumstances, the conclusion as to such ownership is not overcome by the mere general averment that the land referred to in item 13 is the tract "involved in this action." *Doyal* v. *Russell*, 183 *Ga.* 518 (2) (189 S. E. 32) ; *Reese* v. *Southern Railway Co.*, 35 *Ga. App.* 369 (1-*a*) (133 S. E. 284) ; *Coleman* v. *Western & Atlantic Railroad*, 48 *Ga. App.* 343 (4) (172 S. E. 577). "It means nothing for a grantor conveying a part of his land to give as a boundary thereof other portions of the whole tract without in some way identifying the dividing line between such portion and the part intended to be conveyed." *Holloway* v. *Key*, supra. Since the other allegations of the petition, besides the general averment quoted, demanded the conclusion that the testator did own such other adjoining lands, the following cases are distinguishable in so far as they might tend to the view that in the absence of special demurrer a mere general allegation would be sufficient to show connection between the subject-matter of the contract or will and the property involved in the action : *Singleton* v. *Close*, 130 *Ga.* 716 (2) (61 S. E. 722) ; *Little* v. *Saunders*, 163 *Ga.* 842 (2) (137 S. E. 49). For examples of specific allegations showing such connection, see *Valdosta Machinery Co.* v. *Finley*, 164 *Ga.* 706 (2) (139 S. E. 337) ; *Arrendale* v. *Dockins*, 166 *Ga.* 62 (2) (143 S. E. 570).

From what has been said, the trust deed on which the plaintiff relied for recovery appeared to be void; and for this reason the petition did not state a cause of action. Since the foregoing rulings appear to be controlling under the record as now presented on the pleadings, it is unnecessary to pass upon other questions raised.

*Judgment reversed. All the Justices concur, except*

DUCKWORTH, Justice, who dissents from the ruling in division 3 of the decision, but concurs in the other rulings and in the judgment.